**CONTINENTAL WESTERN
INSURANCE COMPANY,**
Plaintiff–Appellant,

v.

**HERITAGE ESTATES MUTUAL
HOUSING ASSOCIATION, INC.,**
Defendant–Appellee.

No. 02CA1111.

Colorado Court of Appeals,
Div. II.

Aug. 14, 2003.

Campbell Latiolais & Ruebel, P.C., Colin C. Campbell, Denver, Colorado, for Plaintiff–Appellant.

Fagre & Benson, LLP, Russell O. Stewart, Marie E. Williams, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge CASEBOLT.

In this insurance coverage proceeding, plaintiff, Continental Western Insurance Company, appeals the order awarding attorney fees to defendant, Heritage Estates Mutual Housing Association, Inc. We reverse.

Continental issued property and liability insurance to Heritage for an apartment building that Heritage owned. Heritage submitted a claim under the property insurance coverage for cleanup costs incurred to remediate apartments that required biohazard decontamination and restoration. Contending that the policy's pollution exclusion precluded coverage, Continental instituted a declaratory judgment action seeking a declaration that coverage was not available. Heritage counterclaimed for declaratory judgment and breach of contract based on Continental's failure to pay the claim.

Upon stipulated facts and cross-motions for summary judgment, the trial court concluded that the pollution exclusion was inapplicable and found that coverage was available. The parties subsequently reached an agreement on the amount to be paid under the policy.

Heritage then filed a motion seeking recovery of its attorney fees, asserting authorization under the insurance policy language and § 10–3–1104(1)(h)(VII), C.R.S.2002. Following a hearing, the trial court determined that an award of attorney fees was appropriate under *Huizar v. Allstate Insurance Co.*, 32 P.3d 540 (Colo.App.2000)(*Huizar I*), and § 10–3–1104(1)(h)(VII). This appeal followed.

I.

Continental contends that the trial court erred in awarding attorney fees. Specifically, Continental argues that because the supreme court reversed *Huizar I* in *Allstate Insurance Co. v. Huizar*, 52 P.3d 816

(Colo.2002)(*Huizar II* ), decided after the appeal here was filed, and because attorney fees are not authorized under the insurance contract or the cited statute, the trial court incorrectly awarded fees. We agree.

In the absence of an express statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action. This reasoning is based on the so-called American Rule, which requires each party in a lawsuit to bear its own legal expenses. *Bernhard v. Farmers Ins. Exch.,* 915 P.2d 1285 (Colo.1996).

As noted, the parties may agree otherwise by express provision in their contract. *Agritrack, Inc. v. DeJohn Housemoving, Inc.,* 25 P.3d 1187 (Colo.2001). Determining whether the contract provides for attorney fees presents a question of interpretation of the insurance policy, which we review de novo. *Huizar II, supra; Cruz v. Farmers Ins. Exch.,* 12 P.3d 307 (Colo.App.2000).

Insurance policies are contracts that must be construed according to their plain meaning and the well-settled principles of contract interpretation. *Chacon v. Am. Family Mut. Ins. Co.,* 788 P.2d 748 (Colo. 1990). Strained construction of the contract terms should be avoided. *Allstate Ins. Co. v. Starke,* 797 P.2d 14 (Colo.1990).

Here, the insurance policy provides two distinct types of coverage, for liability and property, and separates them into different forms and sections. The property coverage form obligates the insurer to pay first-party claims, that is, claims by the insured, for physical loss or damage to the insured's own property. The liability form obligates the insurer to defend and pay those sums the insured becomes legally obligated to pay as damages because of bodily injury or property damages sustained by third parties.

The only policy language that would authorize attorney fees is found under the liability coverage. As pertinent here, that coverage provides:

In addition to the Limit of Insurance, we will pay, with respect to any claim or "suit" we defend:

. . . .

(4) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" . . . .

For a number of reasons, we conclude that this language does not entitle Heritage to an award of attorney fees.

First, as noted above, the provision is found in the liability portion of the policy. When a contract is organized into separate parts, a provision or definition found in one part of the contract is not necessarily intended to apply to other parts. *See Huizar II, supra,* 52 P.3d at 819. Here, Heritage sought coverage for cleanup costs under the property coverage portion of the policy, which contains no provision addressing payment of the insured's attorney fees.

Second, the term "liability insurance" generally refers to the insured's liability to a third party. *See Huizar II, supra,* 52 P.3d at 820 (liability insurance is an agreement to cover a loss resulting from one's liability to a third party, and the insured's claim under the policy arises once the insured's liability to a third party has been asserted). Because Heritage was not liable to a third party for damages, but rather sought coverage on its own first-party claim, the attorney fee provision found in the liability coverage does not apply.

And third, the policy provision specifically states that it applies only to instances in which Continental must defend a claim or suit and for which it seeks the assistance of Heritage. A common sense reading leads to the conclusion that the provision applies only when Continental is defending Heritage against a third-party claim or suit.

This result is consistent with the supreme court's analysis in *Huizar II.* There, the court observed that language obligating the insurance company to pay "other reasonable expenses incurred at [the insurer's] request" was found only in the liability coverage form, and nothing in either the context or specific language of the insurer's promise to defend and pay reasonable expenses suggested any intent for it to apply beyond the part of the contract in which it was found. The policy

language here and its placement in the liability portion of the policy are substantially similar to the policy analyzed in *Huizar II.*

Heritage nevertheless asserts that, because it filed counterclaims, Continental was required "to defend" against those claims and Heritage incurred expenses related to that defense. We reject this contention.

The notion that in this suit Heritage incurred expenses pursuant to Continental's "request to assist [Continental] in the investigation or defense of the claim or suit" is a strained construction at best. Heritage did not assist Continental in this suit, nor did Continental request Heritage's assistance. To interpret that provision to apply when Continental is "defending" a counterclaim brought by its own insured would be an absurd interpretation, which we must avoid. *See Huizar II, supra.*

Accordingly, because the insurance contract does not contain any applicable express exception to the well-established rule that each party must bear its own legal expenses, Heritage is not entitled to attorney fees based on the contract language.

## II.

Heritage asserts that § 10–3–1104(1)(h)(VII), a provision of the Unfair Competition Deceptive Practices Act (UCDPA), provides an independent basis for the award of attorney fees here. We disagree.

The cited provision states:

(1) The following are defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . .

(h) Unfair claim settlement practices: Committing or performing, either in willful violation of this part 11 or with such frequency as to indicate a tendency to engage in a general business practice, any of the following:

. . .

(VII) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially

less than the amounts ultimately recovered in an action brought by such insureds.

However, the statute merely defines the actions that constitute unfair methods of competition and unfair practices in the business of insurance. No part of the language of the statute authorizes an award of attorney fees.

■ Relying upon *Showpiece Homes Corp. v. Assurance Co. of Am.,* 38 P.3d 47 (Colo. 2001), Heritage nevertheless argues that it is entitled to recover attorney fees under a section of the Colorado Consumer Protection Act (CCPA), § 6–1–113(2)(b), C.R.S.2002, because the breach of an insurer's duty as enunciated in the UCDPA is actionable through the CCPA. We are not persuaded.

In *Showpiece Homes,* citing § 10–3–1114, C.R.S.2002, the court held that there is no private right of action under the UCDPA. And a statute cannot form the basis for an award of attorney fees unless it creates a private right of action expressly authorizing recovery of those fees. *See Huizar II, supra,* 52 P.3d at 821. Further, even assuming that Continental breached a duty owed to Heritage as enunciated in the UCDPA and that Heritage could bring such a claim under the CCPA, Heritage did not plead or prove such a claim here. The attorney fees at issue here resulted from the declaratory judgment and breach of contract action, not from a claim asserting a right to recover under the CCPA. Thus, Heritage's argument is unavailing.

## III.

■ We likewise reject Heritage's contention that the attorney fees award was justified under § 13–17–101, et seq., C.R.S.2002, because Continental's action in seeking a declaratory judgment was substantially frivolous and groundless. As in *Huizar II, supra,* here the trial court was not requested to, and did not find, that any behavior of Continental violated § 13–17–101. It merely agreed with Heritage that the express provisions of the contract authorized the award. In the absence of findings that Continental's reliance on the pollution exclusion provision was substantially frivolous, groundless, or

vexatious, no statutory exception to the general rule permits an award of attorney fees. *See Huizar II, supra.*

## IV.

Heritage contends that *Allstate Insurance Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979), and public policy grounds dictate a different result. We reject that contention as well.

In *Robins,* a declaratory judgment action by the insurer concerning insurance coverage, a division of this court determined that an insured could recover attorney fees based on a provision in the insurance policy that obligated the insurer to reimburse the insured for all reasonable expenses incurred at the insurer's request. Essentially, the division held that the filing of a declaratory judgment action constituted a "request" by the insurer to the insured to incur expenses. The division noted that, by recovering attorney fees, the insured was merely restored to the position he would have occupied had the insurer honored its contract in the first instance, a result consistent with the division's view of public policy.

Unlike here, in *Robins* the reimbursement language was apparently not limited to any particular coverage and was clearly broader than that in Continental's policy. Here, as noted, the reimbursement language applies only in a liability setting, one that is not implicated under these facts.

■ Heritage nonetheless argues that the same public policy principle applies in this situation, that is, awarding attorney fees would simply restore Heritage to its original position as if Continental had honored its contract in the first place. It notes that another division of this court, in *Hedgecock v. Stewart Title Guaranty Co.,* 676 P.2d 1208 (Colo.App.1983), affirmed an award of attorney fees to the insured in a coverage case although the policy contained no promise by the insurer to pay expenses incurred at the insurer's request. However, in view of the supreme court's holding in *Huizar II,* and its statement that courts are not permitted to award attorney fees simply because the equities in the case dictate it, we question whether *Hedgecock* remains good law. To the extent it would dictate a contrary conclusion in this case, we decline to follow it. *See Bunnett v. Smallwood,* 793 P.2d 157 (Colo.1990)(rejecting argument that equitable principles should allow recovery of attorney fees).

For the same reason, we perceive that the *Huizar II* decision significantly undercuts the public policy rationale of *Robins,* even though the court did not cite *Robins* anywhere in its opinion.

Accordingly, we reject Heritage's contention that public policy justifies the award of attorney fees.

## V.

Heritage contends that, if we determine it is not entitled to attorney fees for the reasons stated by the trial court, we should order a remand, directing the court to consider whether attorney fees are available under any other theory. Heritage makes this request because the trial court's decision was based in part on *Huizar I,* a case subsequently reversed by *Huizar II* after the notice of appeal was filed here. Alternatively, Heritage requests a remand for trial on its claim for bad faith. We decline the request.

■ Heritage has cited no authority that would grant it another opportunity to litigate entitlement to attorney fees. Generally, a party should present at one time all grounds justifying the relief it requests. *See* Restatement (Second) of Judgments § 25 (1982). And a ground not raised in the trial court generally will not be reviewed on appeal. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

Here, Heritage did not argue in the trial court that it was entitled to attorney fees under any authority or on any grounds other than the UCDPA and the insurance policy. Accordingly, the trial court was not presented with such an issue. Hence, we decline to require it to do so on remand.

Concerning the bad faith assertion, in one paragraph of its counterclaim Heritage alleged that Continental acted in bad faith in denying coverage based on the pollution ex-

clusion. However, that allegation was contained in its first counterclaim, entitled "breach of contract," and no separate claim for tortious breach of the insurance contract was alleged.

Further, at the parties' request, the court entered judgment on the first counterclaim for the stipulated cleanup costs and interest. Heritage did not assert that it wished to litigate a claim for attorney fees under that theory, nor did it do so during the subsequent hearing on attorney fees. Under these circumstances, we conclude that any claim for bad faith was either waived or merged into the judgment. *See* Restatement (Second) of Judgments § 18.

Hence, we decline to grant the remand Heritage requests.

The order is reversed.

Judge WEBB and Judge METZGER * concur.