**Joseph A. BERNAL and Janella Bernal, Plaintiffs–Appellees and Cross–Appellants,**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY, an Illinois corporation, licensed to transact business in Colorado; and Kemper Insurance Companies, an Illinois corporation, f/k/a Kemper National Insurance Companies, Defendants–Appellants and Cross–Appellees,**

and

**Pepsi Bottling Company, f/k/a Pepsi Cola Metropolitan Bottling Company, a Delaware corporation, Intervenor–Appellant and Cross–Appellee.**

No. 02CA0958.

Colorado Court of Appeals, Div. IV.

Dec. 4, 2003.

Rehearing Denied Feb. 19, 2004.

Certiorari Denied Aug. 16, 2004.

Law Firm of William Babich, William Babich, Denver, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

White and Steele, P.C., John M. Lebsack, Denver, Colorado, for Defendants–Appellants and Cross–Appellees.

Wheeler Trigg & Kennedy PC, Michael L. O'Donnell, Carolyn J. Fairless, Denver, Colorado, for Intervenor–Appellant and Cross–Appellee.

Opinion by Judge WEBB.

In this declaratory judgment action concerning underinsured motorist benefits, defendants, Lumbermens Mutual Casualty Company and Kemper Insurance Companies, and intervenor, Pepsi Bottling Company, appeal the summary judgment entered in favor of plaintiffs, Joseph A. and Janella Bernal.

Plaintiffs cross-appeal the denial of their request for attorney fees. We affirm.

The parties stipulated that Mr. Bernal was injured in a motor vehicle accident while driving a truck registered to Pepsi and insured by Lumbermens in Colorado, where the accident occurred; that he was then an employee of Pepsi acting within the course and scope of his employment; and that the accident involved a negligent, underinsured motorist.

Plaintiffs sought a declaratory judgment that Mr. Bernal was entitled to recover underinsured motorist benefits from Lumbermens and an attorney fees award.

As relevant here, the Lumbermens policy provided general liability coverage for anyone "using" any company vehicle with permission. However, Pepsi elected uninsured/underinsured (UM/UIM) coverage for persons "occupying" its "OWNED PRIVATE PASSENGER 'AUTOS' ONLY." Thus, the UM/UIM coverage did not include the Pepsi truck involved in the accident.

The trial court concluded that the provision limiting UM/UIM coverage to private passenger autos was void under § 10–4–609(1), C.R.S.2003. While recognizing that the statute allows an insured to elect the amount of UM/UIM coverage from zero to the maximum offered by the insurer, the court reasoned that the statute does not allow the scope of UM/UIM coverage to be more limited than the scope of general liability coverage. The court denied plaintiffs' request for attorney fees. We agree with the trial court, but on somewhat different grounds as to the coverage issue.

This coverage dispute raises two related questions: first, whether § 10–4–609(1) prohibits a policyholder from contracting for UM/UIM coverage narrower in scope than general liability coverage; and second, if not, whether a limitation on UM/UIM coverage by type of vehicle is nevertheless void as against public policy.

"An insurance policy is a contract between the insured and the insurer, and as such, it is to be interpreted according to settled principles of contract law." *State Farm Mut.*

*Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1259 (Colo.2003).

However, if a provision violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage," then it is to that extent unenforceable. *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 173 (Colo.2001)(quoting *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo.1990))(*DeHerrera*); *see also State Farm Mut. Auto. Ins. Co. v. Kastner, supra.*

"Section 10–4–609, C.R.S.2003, regulates the insurance coverage for injuries caused by uninsured [and underinsured] motorists and therefore governs the terms of the insurance contract." *State Farm Mut. Auto. Ins. Co. v. McMillan*, 925 P.2d 785, 792 (Colo.1996); *see Jones v. AIU Ins. Co.*, 51 P.3d 1044 (Colo.App.2001)(underinsured motorist coverage is provided as part of uninsured motorist coverage).

In determining the breadth of freedom of contract concerning UM/UIM coverage under the statute, we are guided by long-established rules of statutory construction. *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo.1995)(*McMichael*).

The interpretation of a statute is a question of law that we review de novo. *United Airlines, Inc. v. Indus. Claim Appeals Office*, 993 P.2d 1152 (Colo.2000); *Fazio v. State Farm Mut. Auto. Ins. Co.*, 55 P.3d 229 (Colo.App.2002).

"When interpreting statutes we must give full effect to the intent of the legislature. To do so, it is our duty to interpret statutory terms in accordance with their plain and ordinary meaning. If a statute is ambiguous, we may consider legislative history as indicative of legislative intent. Moreover, we may take into account the underlying purpose or policy of the statutory enactments when determining the legislative intent." *McMichael*, 906 P.2d at 97 (citations omitted).

"In determining the scope and intent of a statute, the best guide is often the [legislative] declaration of policy." *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312, 1325 (Colo.1994)(Erickson, J., specially concurring).

## I.

We first consider whether UM/UIM coverage provided at the specific request of a policyholder, but narrower in scope than general liability coverage, impermissibly dilutes, conditions, or limits statutorily mandated coverage under § 10–4–609. We conclude it does not.

The supreme court has interpreted § 10–4–609(1)(a) as being in the nature of a "mandatory offer," which is not "intend[ed] to set forth comprehensive requirements for uninsured motorist coverage." *Terranova v. State Farm Mut. Auto. Ins. Co., supra*, 800 P.2d at 62; *see also* 3 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 32.2 (rev.2d ed.1999).

Thus, an insurer must offer UM/UIM coverage to a class of persons as broad as the class covered under the liability provisions of an automobile insurance policy. *McMichael.* If a policyholder accepts this offer, then an insurer must provide coextensive UM/UIM and general liability coverage. *DeHerrera.*

However, the plain language of § 10–4–609(1)(a) also expressly permits the policyholder to reject UM/UIM coverage:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the

*named insured may reject such coverage* in writing.

(Emphasis added.)

The parties cite no case, nor have we found one, resolving whether the statute permits an insurer to issue UM/UIM coverage narrower than general liability coverage at a policyholder's specific request, as the parties agree occurred here. The legislative history does not address this question.

The phrase "may reject such coverage" permits two plausible interpretations.

On the one hand, the phrase could require an all-or-nothing rejection of the insurer's offer of coextensive coverage, thus precluding the policyholder from counteroffering and contracting for UM/UIM coverage narrower than general liability coverage. The absence of qualifying language, such as "may reject *or lower*" or "may reject *in whole or in part*," supports this reading.

On the other hand, this phrase could indicate only that a policyholder need not accept any UM/UIM coverage, without restricting the policyholder's ability to negotiate for and obtain UM/UIM coverage narrower than general liability coverage. The language of § 10–4–609 includes no express restriction on the policyholder's freedom to modify the scope of UM/UIM coverage.

The supreme court's interpretation of the statute in terms of a mandatory offer, not mandatory coverage, supports this reading. *See Terranova v. State Farm Mut. Auto. Ins. Co., supra; see also Kral v. Am. Hardware Mut. Ins. Co.,* 784 P.2d 759, 763 (Colo.1989)(statute "requires an insurer to permit an insured to purchase" UM/UIM coverage). As a mandatory offer statute, § 10–4–609 establishes an insurer's initial obligations, without limiting a policyholder's ability to counteroffer for narrower UM/UIM coverage.

We next consider legislative purpose to determine whether the statutory phrase "may reject" requires an all-or-nothing acceptance of an insurer's offer, and conclude it does not.

The legislative declaration of Colorado's Motor Vehicle Financial Responsibility Act states:

The general assembly is acutely aware of the toll in human suffering and loss of life, limb, and property caused by negligence in the operation of motor vehicles in our state. Although it recognizes that this basic problem can be and is being dealt with by direct measures designed to protect our people from the ravages of irresponsible drivers, the general assembly is also very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible. In prescribing the sanctions and requirements of this article, it is the policy of this state to *induce and encourage* all motorists to provide for their financial responsibility *for the protection of others*, and to *assure the widespread availability* to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists.

Section 42–7–102, C.R.S.2003 (emphasis added).

Thus, through the enactment of § 10–4–609 the General Assembly sought to guarantee the "widespread availability" of protection to persons against financial loss, *McMichael*, and to protect insureds from losses caused by "motorists who are financially irresponsible" because they do not carry liability insurance. *Terranova v. State Farm Mut. Auto. Ins. Co., supra.*

By requiring an offer of UM/UIM coverage coextensive with general liability coverage, § 10–4–609(1) also protects consumers unaware of or unschooled in the language of insurance contracts and thereby protects consumers' expectation that they have purchased coextensive UM/UIM coverage and general liability coverage. *McMichael.*

At the same time, § 10–4–609 does not mandate any UM/UIM coverage. *Terranova v. State Farm Mut. Auto. Ins. Co., supra.* Hence, we consider whether any restriction on a policyholder's freedom to narrow the scope of UM/UIM coverage from the insurer's offer should be implied to effectuate the stated legislative purpose in light of the statute's express recognition that a policyholder may reject UM/UIM coverage entirely.

The statutorily mandated offer furthers one legislative purpose, widespread availability of UM/UIM protection, whether accepted or rejected. Hence, narrowing UM/UIM coverage by a policyholder does not erode this purpose.

Total rejection of UM/UIM protection by a policyholder necessarily limits "protection of the persons insured thereunder" against financial loss, the other legislative purpose. In contrast, allowing a policyholder to accept some UM/UIM coverage, but narrower in scope than general liability coverage, still partly furthers the legislative purpose to protect persons. Thus, an interpretation of "may reject" as permitting a policyholder to reduce the scope of UM/UIM coverage below general liability coverage better effectuates the legislative purpose than an "all-or-nothing" interpretation.

Nevertheless, plaintiffs argue that *McMichael* requires an all-or-nothing interpretation. We are not persuaded.

The plaintiff in *McMichael* sought UM/UIM benefits under an insurance policy issued to his employer. The insurer had offered and provided general liability coverage for permissive users of insured automobiles, while the UM/UIM provision covered only persons who occupied insured vehicles. The insurer denied coverage on the basis that, while the plaintiff may have been using his employer's vehicle at the time of the accident, he was not then occupying it. The court framed the issue as, "Although we have consistently held that insurers are required to offer UM/UIM coverage to their customers, we have never determined what class of persons this offer must cover." *McMichael*, 906 P.2d at 96.

The court then held that § 10–4–609(1) required "insurers *to offer* UM/UIM coverage to a class of individuals as broad as the class covered under the liability provisions of an automobile insurance policy." *McMichael*, 906 P.2d at 94 (emphasis added). It explained that the General Assembly's intent to make UM/UIM coverage widely available supports this conclusion. Thus, contrary to plaintiffs' assertion, the supreme court did not consider any limitation on an insurer's providing UM/UIM coverage for a more limited class in response to a policyholder's counteroffer.

We are also unpersuaded by plaintiffs' argument that any limitation on the scope of UM/UIM coverage must be expressly authorized by statute. The cases on which plaintiffs rely—*DeHerrera; Kral v. Am. Hardware Mut. Ins. Co., supra;* and *Farmers Ins. Exch. v. McDermott*, 34 Colo.App. 305, 527 P.2d 918 (1974)—do not hold that, as asserted in plaintiffs' brief, "in light of the expressed legislative purpose, unless expressly authorized by C.R.S. § 10–4–609(1), restrictions on UM/UIM protection are void as against public policy."

*Kral* applies the principle that UM/UIM benefits "reflect a clear legislative purpose to place an injured party having uninsured motorist coverage in the same position as if the uninsured motorist had been insured." *Kral, supra*, 784 P.2d at 764. *DeHerrera*, as discussed below, turned on the rule that "a restriction [which] violates public policy . . . is void." *DeHerrera*, 30 P.3d at 176.

Therefore, we conclude that § 10–4–609(1) does not imply a restriction on a policyholder's ability to contract for UM/UIM coverage narrower in scope than general liability coverage in light of Colorado's "strong policy of freedom of contract." *See Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.*, 947 P.2d 341, 346 (Colo.1997). Hence, Pepsi could counteroffer for, and Lumbermens could then issue, a policy providing UM/UIM coverage narrower in scope than general liability coverage.

## II.

Consequently, we must also resolve the related question, whether public policy nevertheless precludes an insurer from restricting UM/UIM coverage according to type of vehicle, even if requested by the policyholder. We conclude that public policy, as articulated in *DeHerrera*, precludes this restriction.

In *DeHerrera*, the insurer offered and issued to the plaintiff a policy with UM/UIM coverage that, in contrast to the general liability coverage, excluded an insured occupy-

ing a vehicle which is not a car. After the plaintiff's son was injured in an accident with an underinsured motorist while riding his off-road motorcycle, she sued the insurer for underinsured motorist benefits.

The supreme court held that the insurer could not deny these benefits based on the insured's occupancy of a particular vehicle because "the statute provides coverage for *persons;* it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of vehicle." *DeHerrera,* 30 P.3d at 175.

The court went on to explain that its holding protects an innocent insured *"whenever* or *wherever* bodily injury is inflicted upon him by the negligence of an uninsured motorist" and "without regard to the vehicle occupied by the insured at the time of the injury." *DeHerrera,* 30 P.3d at 169, 175 (quoting *Mullis v. State Farm Mut. Auto. Ins. Co.,* 252 So.2d 229, 238 (Fla.1971)).

In our view, *DeHerrera* enunciates a public policy beyond the court's previous mandatory offer interpretation of § 10–4–609, *see Terranova v. State Farm Mut. Auto. Ins. Co., supra,* that voids all type of vehicle restrictions on UM/UIM coverage. *See also Jaimes v. State Farm Mut. Auto. Ins. Co.,* 53 P.3d 743, 747 (Colo.App.2002)("[T]he 'owned but not insured' [vehicle] exclusion is void as against the public policy of Colorado.").

Because the UM/UIM coverage offered and provided in *DeHerrera* was not coextensive with the general liability coverage, the court could have resolved the issue merely by reiterating its holding in *McMichael* that the classes of insured must be treated the same in the insurer's offer. Instead, the court went beyond *McMichael* and broadly stated, "Because of the important policy behind UM/ UIM insurance to protect *persons* from the often-devastating consequences of motor vehicle accidents, we have concluded that great weight must be accorded this legislative intent." *DeHerrera,* 30 P.3d at 174 (emphasis added).

Moreover, the court in *DeHerrera* considered but was not persuaded by a potentially "unjust result" involving circumstances simi-

lar to the present case: "[A] family owning more than one vehicle may purchase insurance for only one vehicle, under the rule of this case, and yet recover UM/UIM benefits when struck by an uninsured motorist while occupying any of its owned but uninsured vehicles." *DeHerrera,* 30 P.3d at 176. In this regard, the court contrasted the absence of reference to type of vehicle exclusion anywhere in § 10–4–609 with the former No Fault Act's explicit recognition that a particular vehicle could be excluded.

We are bound by the decisions of the Colorado Supreme Court. *See, e.g., People v. Robson,* 80 P.3d 912, 2003 WL 22208384 (Colo.App. No 02CA1435, Sept. 25, 2003); *People v. Rivas,* 77 P.3d 882 (Colo.App.2003).

Accordingly, we conclude the public policy expressed in *DeHerrera* voids the type of vehicle limitation for UM/UIM coverage on which Lumbermens relies.

### III.

■ On cross-appeal, plaintiffs argue that the trial court erred in declining to award them attorney fees under § 13–17–101, et seq., C.R.S.2003. We disagree.

Initially, the trial court awarded plaintiffs attorney fees, relying on *Allstate Insurance Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979). Following the supreme court's decision in *Allstate Insurance Co. v. Huizar,* 52 P.3d 816 (Colo.2002), which appears to have overruled *Robins* sub silentio, *see Cont'l W. Ins. Co. v. Heritage Estates Mut. Housing Ass'n,* 77 P.3d 911 (Colo.App.2003), plaintiffs moved to modify the fee award and requested fees under § 13–17–101, et seq. The trial court declined to find that Lumbermens' position on UM/UIM coverage was groundless or frivolous. We agree with the trial court.

■ Whether a claim or defense is groundless or frivolous, and whether to award attorney fees under § 13–17–101, are matters of trial court discretion. *Christian v. Westmoreland,* 809 P.2d 1105 (Colo.App. 1991). An unsuccessful argument is not therefore per se groundless or frivolous. *Hart & Trinen v. Surplus Elects. Corp.,* 712 P.2d 491 (Colo.App.1985). Rather, ground-

lessness involves the inability to produce evidence in support of the claim or defense. *Bilawsky v. Faseehudin,* 916 P.2d 586 (Colo. App.1995). Frivolousness involves the inability to present a rational argument supporting the claim or defense. *W. United Realty, Inc. v. Isaacs,* 679 P.2d 1063 (Colo.1984). Fees should not be awarded against a party who makes a good faith effort to reverse, modify, or distinguish existing law. *Norton v. Sch. Dist. No. 1,* 807 P.2d 1160 (Colo.App.1990).

Here, the parties filed cross-motions for summary judgment based on stipulated facts, which the trial court initially denied. The trial court granted plaintiffs' subsequent summary judgment motion only after the supreme court decided *DeHerrera.* Both on appeal and before the trial court, Lumbermens made rational arguments and a good faith effort to distinguish *DeHerrera.*

As to the first facet of the coverage dispute, we agree with Lumbermens' position. As to the second facet, whether *DeHerrera* should be limited to an insurer's offer of narrower UM/UIM coverage than general liability coverage, or read broadly to prohibit type of vehicle limitations even if requested by the policyholder, had not been previously decided.

For these reasons, we conclude that the trial court acted within its discretion in denying plaintiffs' request for attorney fees.

The judgment is affirmed.

Judge KAPELKE and Judge VOGT concur.