The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 5, 2022

## 2022COA49

**No. 20CA1356, *Hughes v Essentia Ins.* — Insurance — Motor Vehicles — Automobile Insurance Policies — Uninsured/Underinsured**

In this appeal from a trial court's grant of summary judgment in an automobile insurance coverage dispute, a division of the court of appeals rejects the proposition that a vehicle-based restriction on uninsured/underinsured motorist (UM/UIM) coverage is consistent with section 10-4-609, C.R.S. 2021. Instead, the division concludes that the supreme court's holding in *DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167 (Colo. 2001), prohibits a limitation of UM/UIM coverage that purports to tie protection against an uninsured or underinsured motorist to the insured's occupancy or use of a specific vehicle or type of vehicle. To the extent that this conclusion

is inconsistent with the holding in *Cruz v. Farmers Ins. Exch.*, 12 P.3d 307 (Colo. App. 2000), the division declines to follow it.

COLORADO COURT OF APPEALS                           **2022COA49**

Court of Appeals No. 20CA1356
Boulder County District Court No. 19CV30790
Honorable Thomas F. Mulvahill, Judge

Beverly Hughes,

Plaintiff-Appellant,

v.

Essentia Insurance Company,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE WELLING
Dunn and Yun, JJ., concur

Announced May 5, 2022

Bachus & Schanker, LLC, Corey A. Holton, Scot Kreider, Denver, Colorado, for
Plaintiff-Appellant

Sutton|Booker P.C., Jacquelyn S. Booker, Rachel T. Jennings, Denver,
Colorado, for Defendant-Appellee

¶ 1     This is an appeal from a trial court's grant of summary judgment in an automobile insurance coverage dispute.  The plaintiff, Beverly Hughes, was injured in a car accident and sought to recover uninsured/underinsured motorist (UM/UIM) benefits under her auto insurance policy from defendant, Essentia Insurance Company (Essentia), which insured her two classic cars.  At the time of her injury, Hughes wasn't driving either of the classic cars and was, instead, driving her "regular use vehicle" — a vehicle she was required to have and separately insure in order to maintain her classic car insurance policy.

¶ 2     The classic car insurance policy explicitly excepted "regular use vehicles" from UM/UIM coverage, and therefore Essentia refused to provide Hughes with UM/UIM benefits for her injuries because she wasn't using one of the classic cars at the time of the accident.  Hughes filed suit, alleging that she was entitled to the UM/UIM benefits under the Essentia classic car insurance policy regardless of what vehicle she was driving at the time of the accident.

¶ 3     Relying on *Cruz v. Farmers Insurance Exchange*, 12 P.3d 307 (Colo. App. 2000), the trial court concluded that a "regular use

1

vehicle" exclusion in a classic car insurance policy adheres to both section 10-4-609, C.R.S. 2021, and the supreme court's interpretation of section 10-4-609, because Hughes was still protected through her "regular use vehicle" insurance policy.

¶ 4     This case raises an issue of first impression: whether an automobile insurance policy restriction that insureds can only access their UM/UIM benefits when they are injured in the covered vehicle is valid under section 10-4-609.  We conclude that it isn't.

¶ 5     We reject the proposition that a vehicle-based restriction is consistent with section 10-4-609.  Instead, we conclude that the trial court erred by failing to apply our supreme court's holding in *DeHerrera v. Sentry Insurance Co.*, 30 P.3d 167 (Colo. 2001), which provides that UM/UIM benefits cover *persons* injured by uninsured or underinsured motorists and can't be tied to the occupancy or use of a particular vehicle or type of vehicle.

¶ 6     Therefore, we reverse the summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I.   Background

¶ 7     Hughes alleged that she was seriously injured in an automobile accident caused by another driver.  At the time of the accident, Hughes was driving a Ford Edge owned by her employer but provided to her for her regular use.  The driver who caused the accident was insured by an auto policy with bodily injury limits of $25,000.  Hughes alleged that her injuries and losses substantially exceeded the negligent driver's insurance coverage limit.

¶ 8     At the time of the accident, Hughes was insured by two automobile insurance policies: one issued by Travelers Insurance (Travelers) and another issued by Essentia.  Both policies provided for UM/UIM coverage.  Hughes filed suit against both Travelers and Essentia for UM/UIM benefits.  Hughes settled her claim against Travelers.

¶ 9     The Essentia policy insures two classic cars — a 1967 Ford Mustang and a 1930 Ford Model A.  Under the Essentia policy, Hughes' husband is the named insured and Hughes is a named driver.  The Essentia policy requires that the policy holder own a "regular use vehicle," which must be "insured by a separate

3

insurance policy which must be in effect for the entire time [the Essentia classic car] policy is in effect."

¶ 10     Essentia moved for summary judgment on Hughes' claims, arguing that Hughes wasn't entitled to UM/UIM benefits under the Essentia policy because, at the time of the accident, she wasn't driving one of the covered cars (the 1967 Ford Mustang or the 1930 Ford Model A) but was driving her "regular use vehicle."

¶ 11     The trial court granted summary judgment in favor of Essentia, concluding that enforcing the Essentia policy as written is consistent with section 10-4-609 and Colorado public policy, and protects Hughes' interest in two ways.

¶ 12     First, the trial court found that the Essentia policy is specifically for classic cars, and the Essentia policy states that the insured cars are not considered "regularly used vehicles." Thus, the clear language of the policy states that the insured classic cars wouldn't be regularly used, lowering the likelihood and risk of an accident and, in turn, lowering the insurance rates and premiums for cars in this category.

¶ 13     Second, the trial court reasoned, Hughes' interest was protected through the Essentia policy's requirement that she

4

maintain a separate and more substantial insurance policy for her regularly used vehicle.

## II. Analysis

¶ 14 Hughes contends that the trial court erred by granting Essentia's motion for summary judgment based on an erroneous application of Colorado law. Specifically, Hughes contends that the policy's exclusion of coverage when the insured is using a "regular use vehicle" (1) directly contradicts the plain language of section 10-4-609 and (2) violates Colorado public policy. We agree that the trial court erred.

## A. Standard of Review

¶ 15 Because we are reviewing the trial court's grant of summary judgment, we review each contention de novo, applying the same standard as the trial court. *Poudre Sch. Dist. R-1 v. Stanczyk*, 2021 CO 57, ¶ 12. A court may grant a motion for summary judgment when the pleadings and supporting documents establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56(c); *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11.

¶ 16   An insurer must offer UM/UIM coverage in an automobile liability or motor vehicle liability policy.  § 10-4-609(1)(a); *DeHerrera*, 30 P.3d at 173–74.  If the insured purchases UM/UIM coverage, then an insurer must provide those UM/UIM benefits when an insured person is "legally entitled to recover damages from owners or operators of uninsured [or underinsured] motor vehicles." § 10–4–609(1)(a), (4).  In other words, an insured is entitled to recover UM/UIM benefits when the at-fault driver either doesn't have any liability insurance or is underinsured.  § 10–4–609(4); *DeHerrera*, 30 P.3d at 173–74.

¶ 17   UM/UIM coverage is "in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained . . . up to the maximum amount of the [UM/UIM] coverage obtained pursuant to this section." § 10-4-609(1)(c); *see Mullen v. Metro. Cas. Ins. Co.*, 2021 COA 149, ¶ 30.  Put differently, UM/UIM coverage fills the gap between a tortfeasor's insurance liability limit and the amount of damages sustained by the insured, up to the amount of the UM/UIM coverage purchased.  *Mullen,*

¶ 31; *see also Jordan v. Safeco Ins. Co. of Am., Inc.*, 2013 COA 47, ¶ 30.

¶ 18    By enacting section 10-4-609, the General Assembly's purpose was to guarantee the widespread availability to the insuring public of insurance protection against financial loss caused by motorists who are financially irresponsible by failing to carry adequate liability insurance. *Bernal v. Lumbermens Mut. Cas. Co.*, 97 P.3d 197, 201 (Colo. App. 2003). Put differently, the purpose of the UM/UIM statute is to ensure that individuals injured in an automobile accident will be compensated for their losses even if the other motorist is underinsured or uninsured. *Peterman v. State Farm Mut. Auto. Ins. Co.*, 961 P.2d 487, 492 (Colo. 1998).

¶ 19    Our supreme court interpreted the breadth of section 10-4-609 in *DeHerrera*. In that case, the named insured — DeHerrera — had a Sentry insurance policy that provided UM/UIM coverage to DeHerrera, her spouse, and her son who lived with her. 30 P.3d at 169. DeHerrera's son, while riding his off-road motorcycle, was injured in an accident involving a pickup truck driven by a third party. *Id.* The motorcycle wasn't a vehicle covered by the Sentry policy. *Id.* The third-party driver paid the limit of his automobile

liability policy, and DeHerrera made a claim for underinsured motorist benefits under the Sentry policy. *Id.* at 168. Sentry denied coverage, asserting that its policy excluded from coverage persons occupying a vehicle other than a car. The trial court granted summary judgment in favor of Sentry, and DeHerrera appealed. *Id.* at 169. A division of this court affirmed the trial court's decision, concluding that the Sentry policy unambiguously denied UM/UIM coverage to an insured who is neither a pedestrian nor an occupant of a car.

¶ 20    Our supreme court reversed, determining that section 10-4-609 mandated coverage irrespective of the vehicle occupied by the insured at the time of injury because the statute provides coverage for *persons*, not vehicles. *Id.* at 175. In reaching this conclusion, the supreme court noted that "[t]he UM/UIM statute contains no provisions excluding protection for an insured based on the kind of vehicle an insured occupies at the time of injury." *Id. DeHerrera* goes on to say that

> UM/UIM coverage, if not waived by the named insured, must protect "persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." § 10–4–609(1).

8

> This phrase, "'persons insured thereunder' means that insurers must provide UM/UIM coverage for the protection of *persons* insured under the liability policy that the insurer is issuing." *Aetna Cas. & Sur. Co. [v. McMichael]*, 906 P.2d [92,] 97 [(Colo. 1995)] (emphasis added). *Thus, the statute provides coverage for persons; it does not place geographical limits on coverage and does not purport to tie protection against uninsured motorists to occupancy in any kind of vehicle.*

*Id.* (emphasis added).

¶ 21    Against this backdrop, we turn to the Essentia policy at issue in this case.

### C.    Essentia's UM/UIM Provision

¶ 22    The UM/UIM provision in the Essentia policy states that Essentia will pay for damages resulting from an accident with an uninsured or underinsured motorist that the "insured" is legally entitled to recover.  "Insured" is broadly defined as including (1) "[y]ou or a 'family member' while using or 'occupying' 'your covered auto'"; (2) "[y]ou or a 'family member' while not 'occupying' a motor vehicle"; (3) "[a]ny other person while 'occupying' 'your covered auto' with permission from you"; and (4) "[a]ny person, for damages that person is legally entitled to recover because of 'bodily injury' to a person described in this definition in 1., 2., or 3. above."

The policy also contains an exception that provides that "insured" shall not mean and does not include "you" or "any other person" while operating or using "any vehicle . . . available for the regular use of you, or any person related to you who resides with you, if that vehicle is not 'your covered auto'." In other words, the policy broadly includes members of a household as insured, but excludes them when they are occupying, operating, or otherwise using a "regular use vehicle." We will refer to this as the "regular use vehicle exclusion."

### D. The Regular Use Vehicle Exclusion Violates Section 10-4-609

The regular use vehicle exclusion is squarely contrary to *DeHerrera*'s central holding: that section 10-4-609 provides coverage for *persons* and doesn't tie protection against uninsured motorists to the insured's occupancy of any particular type of vehicle. *DeHerrera*, 30 P.3d at 175.

Similarly, cases decided post-*DeHerrera* demonstrate that the regular use vehicle exclusion found in the definition of "insured" in the UM/UIM provision of the Essentia policy violates section 10-4-609. In *Jaimes v. State Farm Mutual Automobile Insurance Co.*, 53 P.3d 743, 744 (Colo. App. 2002), for example, a division of this

court invalidated an "owned but not insured provision" of an automobile insurance policy. The *Jaimes* court recognized that

> [u]nder [section 10-4-609], the status of the insured at the time of the accident, whether the occupant of the insured motor vehicle as operator or passenger, the occupant of a nonowned motor vehicle as operator or passenger, a pedestrian, or the operator of an owned but not insured vehicle, is not germane to the insurer's obligation to provide UM/UIM benefits.

*Id.* at 746-47.

¶ 25    In *Bernal,* a division of this court voided a restriction in a business automobile policy purporting to limit UM/UIM coverage to persons occupying owned private passenger automobiles while excluding UM/UIM coverage for persons occupying a company vehicle. 97 P.3d at 203.

¶ 26    Essentia argues that because Hughes was able to recover under her Travelers policy — a policy that Essentia required Hughes to have for her "regular use vehicle" — Hughes was essentially protected by Essentia, and therefore Essentia's policy is in line with section 10-4-609. We reject this logic. Even though Essentia required a second policy, Essentia can't escape its own statutorily mandated duty to provide UM/UIM benefits (if the

11

policyholder elects to purchase them) to *persons*, rather than cars, by attempting to tie its provided UM/UIM coverage to the occupancy of "your covered auto" (in this case, one of the classic cars). Essentia's urged interpretation is contrary to the central holding of *DeHerrera* — namely, that UM/UIM benefits cover people and can't be tied to the occupancy of a certain vehicle.

¶ 27 We aren't persuaded otherwise by Essentia's reliance on *Jacox v. American Family Mutual Insurance Co.*, 2012 COA 170, and *Rivera v. American Family Insurance Group*, 2012 COA 175, for the proposition that a different outcome is warranted or that *DeHerrera* is subject to a narrower reading. The facts of *Jacox* and *Rivera* are similar, and both cases hold that it is a valid and enforceable limit of uninsured motorist coverage for a policy to cover an insured vehicle for liability while excluding it from UM/UIM coverage.

¶ 28 In *Jacox*, the plaintiff was a passenger in a vehicle when the driver fell asleep at the wheel, resulting in a one-car accident in which the plaintiff was injured. *Jacox*, ¶ 2. The plaintiff filed a suit against the driver that was ultimately settled, and she was able to collect the policy limit for bodily injuries under the driver's automobile insurance policy. *Id.* The plaintiff also sought UM/UIM

coverage under that same policy. The driver's policy contained a UM/UIM exclusion that applied to vehicles "insured under the liability coverage of this policy." *Id.* A division of this court held that the plaintiff wasn't entitled to recover UM/UIM benefits under the driver's policy because the exclusion of a vehicle insured under the liability terms of a policy from uninsured motor vehicle coverage was a valid and enforceable limit of uninsured motorist coverage. *Id.* at ¶¶ 8-29.

¶ 29    Similarly, in *Rivera,* the plaintiff was a passenger in a vehicle when she was injured in a one-car accident in which the driver of the vehicle she was in lost control. *Rivera,* ¶ 2. The driver's automobile insurance policy provided a $100,000 liability limit and $100,000 in UM/UIM coverage. *Id.* The policy in *Rivera* contained an exclusion similar to the one in *Jacox. Id.* The driver's insurance carrier paid the plaintiff the liability limit. *Id.* at ¶ 3. But that didn't cover the plaintiff's losses, so she sued to recover under the UM/UIM provisions of the driver's policy, contending that the exclusion wasn't enforceable and she was also covered under the UM/UIM section of the driver's policy. *Id.* at ¶¶ 6-7. The division in *Rivera* rejected the plaintiff's effort, holding that "[w]ithin a *single*

policy . . . an insurer and an insured may contract to restrict what types of injury the policy covers — and, thus, may except certain events or conditions from coverage in the first instance — without flouting [section 10-4-609]." *Id.* at ¶ 19; *see also id.* at ¶ 20 ("[B]ecause a named insured would be bound by such a policy, it follows that an injured third-party plaintiff, like Rivera, who is not a named insured but who claims entitlement to UM/UIM coverage only because she was a passenger in a named insured's vehicle, also would be bound by such a policy.").

¶ 30    *Jacox, Rivera,* and our case have one thing in common: all three plaintiffs are seeking to obtain coverage they didn't bargain for.  Indeed, we concede and fully recognize that what Hughes is seeking is more than she bargained for.  But there are two reasons that we aren't persuaded to follow *Jacox* and *Rivera* in this case. First, we are bound by *DeHerrera,* not *Jacox* or *Rivera*; thus, to the extent *Jacox* and *Rivera* support a different outcome, we decline to follow them.  *See People v. Gladney*, 250 P.3d 762, 768 (Colo. App. 2010).  (For reasons unapparent to us, neither *Jacox* nor *Rivera* discusses or cites — much less distinguishes — *DeHerrera.*)

¶ 31    Second, *Jacox* and *Rivera* are factually distinct.  The plaintiffs in both *Jacox* and *Rivera* were seeking to recover UM/UIM benefits under the *same* policy that insured the vehicle in which they were injured and from which they had already collected under the liability provisions.  Here, Hughes isn't seeking to invoke the liability provisions of the Essentia policy, just its UM/UIM benefit.  And she is doing so because the at-fault driver's coverage is inadequate, not because of any alleged shortcoming of the Essentia policy itself.

¶ 32    Simply put, under section 10-4-609, as interpreted by *DeHerrera*, Hughes is entitled to recover UM/UIM benefits under the Essentia policy for the injuries she sustained when she was involved in an accident with an underinsured motorist.  And because the regular use vehicle exclusion in the Essentia policy violates section 10-4-609, the trial court erred in granting summary judgment in Essentia's favor.

### E.    Public Policy Doesn't Save Essentia's Regular Use Vehicle Exclusion

¶ 33    Essentia argues that Colorado public policy encourages freedom of contract and that even within the context of statutorily

15

mandated insurance, insurance companies must be free to include conditions and exclusions that are not inconsistent with Colorado's mandatory insurance laws. Essentia cites to *Cruz*, 12 P.3d at 312, in support of the proposition that certain exclusions in UM/UIM insurance contracts are permissible in Colorado, including exclusions for a regularly used vehicle that is not insured (and for which no premium is paid) under the policy.

¶ 34    In *Cruz*, the plaintiff was injured in a car accident while on duty as a police officer and driving a car that was assigned for his regular use by the police department. *Id.* at 309. Cruz filed a claim for UM/UIM benefits under his wife's insurance policy. *Id.* The insurer denied the claim based on the "regular use exclusion" contained in Cruz's wife's UM/UIM endorsement, which provided that "[t]his coverage does not apply to bodily injury sustained by a person: . . . . Arising out of the ownership, maintenance, or use of any vehicle other than your insured car . . . which is owned by or furnished or available for regular use by you or a family member." *Id.* A division of this court held that provisions excluding coverage for regularly used cars that are not listed on the policy and for which premiums are not paid are enforceable in Colorado because

16

they protect the insurer from a situation in which the insured pays only for coverage on one vehicle but regularly drives other vehicles not listed on this policy. *Id.*

¶ 35 However, we aren't persuaded by the analysis in *Cruz* for two reasons. First, *Cruz* was decided before our supreme court's decision in *DeHerrera,* and the portions of *Cruz* that Essentia relies on to support its policy argument conflict directly with *DeHerrera,* which — unlike *Cruz* — is binding on us. *See In re Estate of Ramstetter,* 2016 COA 81, ¶ 40. We see no way to reconcile the holding in *Cruz* with the broad protections outlined in *DeHerrera.*

¶ 36 Second, apart from *Cruz,* it's clear that the Essentia policy limits statutorily mandated coverage under section 10-4-609 by tying the UM/UIM coverage to occupancy in certain vehicles, something that *DeHerrera* explicitly precludes. Whether an insurance policy is void as against public policy depends on whether the provision attempts to "dilute, condition, or limit statutorily mandated coverage." *Terranova v. State Farm Mut. Auto. Ins. Co.,* 800 P.2d 58, 60 (Colo. 1990) (quoting *Meyer v. State Farm Mut. Auto. Ins. Co.,* 689 P.2d 585, 589 (Colo. 1984)). Because the Essentia policy doesn't meet the coverage requirements under

section 10-4-609, public policy doesn't dictate that the exclusion must be enforced. Whether *DeHerrera* reflects wise, fair, or prudent public policy is a question for the legislature (or the supreme court in the event it wishes to revisit *DeHerrera*); in the meantime, we are bound by *DeHerrera.*

## III.    Conclusion

¶ 37    For the reasons discussed above, the summary judgment in favor of Essentia is reversed and the case is remanded for further proceedings consistent with this opinion.

JUDGE DUNN and JUDGE YUN concur.