Julie M. TERRANOVA; Janet L. Tretter, By and Through Her Guardian and Next Friend Joseph H. Rea; and Barry M. LeCavalier, Sr., Petitioners,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

No. 88SC538.

Supreme Court of Colorado,
En Banc.

Sept. 10, 1990.

Rehearing Denied Nov. 19, 1990.

Shelley B. Don, P.C., Shelley B. Don, Watson W. Galleher, Denver, for petitioners.

Anderson, Campbell and Laugesen, P.C., Robert L. McGahey, Jr., Denver, for respondent.

Denis H. Mark, Wilcox & Ogden, Ralph Ogden, Denver, for amicus curiae Colorado Trial Lawyers Ass'n.

Justice ERICKSON delivered the Opinion of the Court.

We accepted certiorari pursuant to C.A.R. 50 to determine whether the trial court properly granted summary judgment in favor of respondent State Farm Mutual Automobile Insurance Co. and dismissed the petitioners' claim for uninsured motorist benefits under an automobile policy issued to their mother, Judy LeCavalier. LeCavalier, while a passenger on her motorcycle, died as a result of a single-vehicle accident caused by the negligence of the driver, who was not insured other than as a permissive driver under LeCavalier's policy. The trial court held, on stipulated

facts, that the petitioners could not recover uninsured motorist benefits because the policy specifically provided that an uninsured motor vehicle did not include a vehicle insured under the liability provisions of the policy. We affirm.

## I.

The parties stipulated to the following facts. The petitioners are the natural children of Judy LeCavalier, who died in a single-vehicle motorcycle accident on September 7, 1985. The motorcycle, which was owned by LeCavalier and insured by State Farm under a policy issued to LeCavalier, was driven at the time of the accident by Ronald Jackson, who, as a permissive driver, was defined as an additional insured under the policy. Jackson's negligence was the sole cause of the accident. The policy provided liability coverage in the amount of $25,000 for the death of or bodily injury to LeCavalier and furnished uninsured motor vehicle coverage in the amount of $100,000. State Farm paid $25,000, the liability coverage limits, to the petitioners on behalf of Jackson as an additional insured. The petitioners' economic losses as a result of LeCavalier's death exceeded $100,000.

The petitioners filed an action against Jackson alleging that he negligently caused the death of their mother. Thereafter, State Farm was substituted as the defendant in the action and the petitioners sought a declaratory judgment that State Farm was liable to the petitioners for $75,000, the difference between the uninsured vehicle coverage ($100,000) and the $25,000 liability limits that State Farm paid. State Farm moved for summary judgment on the grounds that the policy did not provide uninsured vehicle coverage for a vehicle insured under the liability terms of the policy. The trial court, relying on *Barba v. State Farm Mutual Automobile Insurance Co.*, 759 P.2d 750 (Colo.App.1988), granted State Farm's motion.

## II.

The petitioners contend that the policy language is ambiguous because the policy provides uninsured motorist coverage to LeCavalier and then removes the coverage through a restrictive definition of the term "uninsured vehicle." [1] In support of their claim that the policy is ambiguous, petitioners point to the following policy language:

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

. . . .

An uninsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy. . . .

Petitioners maintain that the exclusion of a vehicle insured under the policy's liability coverage from uninsured motor vehicle coverage ("insured vehicle exclusion") is inconsistent with the following "household" exclusion:

THERE IS NO COVERAGE:

. . . .

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or
(b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

The State Farm policy issued to LeCavalier contains a similar definition. Because the statutory definition of uninsured motorist coverage includes underinsured vehicles, we do not distinguish between the two types of coverage for the purposes of this opinion.

---

**1.** In this case, State Farm paid $25,000 for LeCavalier's death and the petitioners sought the excess of the uninsured policy limits over this amount. The General Assembly has defined uninsured motorist coverage to include coverage for drivers of underinsured vehicles. Section 10–4–609(4), 4A C.R.S. (1987). Section 10–4–609(4) defines an uninsured motor vehicle as a

[L]and motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

2. FOR BODILY INJURY TO AN INSURED:

a. WHILE OCCUPYING, OR

b. THROUGH BEING STRUCK BY A MOTOR VEHICLE OWNED BY YOU, YOUR SPOUSE OR ANY RELATIVE IF IT IS NOT INSURED FOR THIS COVERAGE UNDER THIS POLICY.

We disagree with the petitioners' contentions.

In the absence of an ambiguity, an insurance policy must be given effect according to the plain and ordinary meaning of its terms. *In re Estate of Daigle*, 634 P.2d 71, 79 (Colo.1981). A court may not rewrite an unambiguous policy nor limit its effect by a strained construction. *Urtado v. Allstate Ins. Co.*, 187 Colo. 24, 26, 528 P.2d 222, 223 (1974). A policy term is ambiguous if it is reasonably susceptible to more than one meaning. *See Travelers Ins. Co. v. Jeffries–Eaves, Inc.*, 166 Colo. 220, 223, 442 P.2d 822, 824 (1968). However, mere disagreement between the parties does not create an ambiguity. *Kane v. Royal Ins. Co.*, 768 P.2d 678, 680 (Colo. 1989).

The State Farm policy covenants to pay damages for bodily injury that the insured is "legally entitled to collect from the owner or driver of an uninsured motor vehicle." The policy, in plain and unambiguous terms, excludes a vehicle insured under the liability portion of the policy from the definition of an uninsured vehicle. Moreover, the definition of an uninsured vehicle does not conflict with the "household" exclusion. The "household" exclusion specifically excludes liability for uninsured motorist benefits when the insured is injured in a vehicle owned by the insured spouse or the insured. The "household" exclusion of uninsured motorist coverage does not grant uninsured vehicle coverage to LeCavalier and is not ambiguous. *See Williams–Diehl v. State Farm Fire & Cas. Co.*, 793 P.2d 587 (Colo.App.1989) (household exclusion valid and enforceable); *Arguello v. State Farm Mut. Auto. Ins. Co.*, 42 Colo. App. 372, 374, 599 P.2d 266, 268 (1979) (same). Read together, the exclusion in the policy of an insured vehicle from uninsured motorist coverage does not conflict with the exclusion of a vehicle owned by the insured, the insured's spouse or the insured's relatives from uninsured motorist coverage.

The policy, according to its clear and unambiguous terms, does not provide uninsured motor vehicle coverage for a vehicle insured for liability coverage.

### III.

Despite the fact that it is unambiguous, a term in a policy may be void and unenforceable if it violates public policy by attempting to "dilute, condition, or limit statutorily mandated coverage." *Meyer v. State Farm Mut. Auto. Ins. Co.*, 689 P.2d 585, 589 (Colo.1984). The petitioners contend that the exclusion of a vehicle insured under the policy's liability terms from uninsured motor vehicle coverage violates the legislative policies underlying section 10–4–609, 4A C.R.S. (1987). Section 10–4–609 provides in part:

(1) No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 42–7–103(2), C.R.S., under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; except that the named insured may reject such coverage in writing.

. . . .

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death which an insured is legally entitled to collect from the owner or

driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident, but the limits of liability for bodily injury or death under such insurance or bonds are:

(a) Less than the limits for uninsured motorist coverage under the insured's policy; or

(b) Reduced by payments to persons other than the insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

The issue is whether the General Assembly intended section 10–4–609 to be a complete statement of uninsured motorist insurance requirements or whether policy provisions that limit recovery of uninsured motorist benefits may be valid under the circumstances.

■ The purpose of the uninsured motorist coverage mandated by section 10–4–609 is to compensate an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists. *Kral v. American Hardware Mut. Ins. Co.*, 784 P.2d 759, 765 (Colo.1989). The legislative intent is satisfied by coverage that compensates a person injured by an uninsured motorist to the same extent as one injured by a motorist who is insured in compliance with the law. *Alliance Mut. Cas. Co. v. Duerson*, 184 Colo. 117, 124, 518 P.2d 1177, 1181 (1974). Section 10–4–609 does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances. *Id.* at 123, 518 P.2d at 1180.

A majority, and the better reasoned cases, have upheld the exclusion of a vehicle under the liability coverage of the policy from uninsured motorist benefits.

*See* 1 A. Widiss, *Uninsured And Underinsured Motorist Insurance*, § 4.18, at 100–01 (2d ed.1985).

In some states, the exclusion is authorized by statute. *See, e.g.,* Or.Rev.Stat. § 742.504(e)(A) (1989). Other jurisdictions, in the absence of express legislative authorization, find that the exclusion does not conflict with the applicable statutory provisions for uninsured motorists. *See, e.g., Breaux v. Government Employees Ins. Co.*, 369 So.2d 1335, 1339 (La.1979); *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 145 (Mo.1980).[2]

The issue of the enforceability of the insured vehicle exclusions was addressed in *Barba v. State Farm Mutual Automobile Insurance Co.*, 759 P.2d 750. The court of appeals held that Barba, who was injured as a passenger in her own car, could recover under the liability terms of the policy, but could not recover uninsured motorist benefits under the policy that insured her vehicle. The court of appeals set forth the language of the exclusion, and said:

If, as here, the provisions of an insurance policy are in plain and unambiguous language and do not violate public policy, we will not relieve a party to the contract from disadvantageous terms or give the language a forced construction. Accordingly, the policy at issue will be enforced according to its terms, and under those terms, uninsured vehicle coverage does not extend to injuries sustained by [the] plaintiff while she was a passenger in her own car.

*Id.* at 751 (citation omitted).

The conclusion that the insured vehicle exclusion does not violate Colorado's public policy as set forth in section 10–4–609 is supported by a comparative review of the Colorado statutes relating to liability cover-

---

**2.** Some states conclude that uninsured motorist benefits are available because the liability insurance covering the insured's vehicle is excluded. *See, e.g., Barnes v. Powell*, 49 Ill.2d 449, 454, 275 N.E.2d 377, 380 (1971); *see also Bowsher v. State Farm Fire & Cas. Co.*, 244 Or. 549, 550, 419 P.2d 606, 607 (1966) (however, not apparent from text of case that policy contained insured vehicle exclusion). After *Bowsher* was decided, Oregon enacted legislation expressly authorizing the use of the insured vehicle exclusion. *See* O.R.S. § 742.504(e)(A). Another theory that finds some support is that the exclusion violates the public policy underlying uninsured motorist statutes favoring recovery of uninsured motorist benefits when there is no liability insurance that the insured can reach. *See, e.g., Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 909 (Iowa 1973); *State Farm Mut. Auto. Ins. Co. v. Nester*, 459 So.2d 787, 793 (Miss.1984).

age and uninsured motorist coverage. The requirement of mandatory minimum liability coverage is to protect the public from financial loss caused by the ownership, operation or maintenance of an automobile by an insured. *See* § 42–7–102, 17 C.R.S. (1984); § 10–4–702, 4A C.R.S. (1987). On the other hand, uninsured motorist coverage, which must be offered to an insured but may be refused in writing, is designed to protect an insured from losses caused by third parties.[3] *Kral*, 784 P.2d at 765. The insured vehicle exclusion prevents a transformation of uninsured motor vehicle coverage into liability insurance when a claim is made for uninsured motorist benefits to compensate for injuries that result from the operation of a vehicle insured under the liability portion of a policy. *See Millers Cas. Ins. Co. v. Briggs*, 100 Wash.2d 1, 8, 665 P.2d 891, 895 (1983); *Myers v. State Farm Mut. Auto. Ins. Co.*, 336 N.W.2d 288, 291 (Minn.1983); *see also* 2 A. Widiss, *Uninsured and Underinsured Motorist Insurance*, § 35.5. In essence, if the insured vehicle exclusion was found to be invalid, the insured would receive uninsured motorist coverage for a risk that was excluded by the policy, and which was not paid for by the insured and not contemplated by Colorado's uninsured motorist legislation. *See Briggs*, 100 Wash.2d at 8, 665 P.2d at 895.

Because of the distinct function of uninsured motorist insurance under Colorado's statutory motor vehicle insurance scheme, we hold that the exclusion of a vehicle insured under the liability terms of a policy from uninsured motor vehicle coverage does not violate the legislative purposes and the public policy underlying section 10–4–609. In our view, the General Assembly, by enacting section 10–4–609, did not intend to set forth comprehensive requirements for uninsured motorist coverage.[4]

The petitioners contend that upholding the policy exclusions places limitations or overrules *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo. 1989), *Newton v. Nationwide Mutual Fire Insurance Co.*, 197 Colo. 462, 594 P.2d 1042 (1979), and *Morgan v. Farmers Insurance Exchange*, 182 Colo. 201, 511 P.2d 902 (1973). We disagree. In *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d at 765–66, we declared that a subrogation clause contained in an insurance policy and a release-trust agreement executed pursuant to the subrogation provision were enforceable only to the extent that they did not impair the ability of the insured to gain full compensation for any loss caused by the conduct of an uninsured motorist. In *Newton*, we held that a policy term permitting the insurer to reduce the

---

**3.** The characterization of uninsured motorist legislation as either mandatory coverage, in which case uninsured motorist coverage must be issued as part of an automobile policy, or mandatory offer is not a controlling factor in determining whether the insured vehicle exclusion violates the dictates of public policy in a given jurisdiction. *See* 1 A. Widiss, *Uninsured and Underinsured Motorist Insurance* § 32.2. However, we find that the mandatory offer nature of section 10–4–609 is relevant in determining the extent to which the General Assembly intended an insured to recover under the uninsured motorist coverage provisions of an automobile insurance policy. *See Alliance Mut. Cas. Co. v. Duerson*, 184 Colo. at 122–23, 518 P.2d at 1180; *see also Locey v. Farmers Ins. Co.*, 115 Idaho 24, 29, 764 P.2d 101, 106 (App.1988).

**4.** The General Assembly amended section 10–4–418, 4A C.R.S. (1987), in 1986 to add subsection 2(b), which provides:

The commissioner [of insurance] shall not find that a policy form, certificate, or contract

of insurance or rider does not comply with the applicable requirements and standards of this title on the ground that it excludes coverage of claims made by a member of a household against another member of the same household. Such exclusions are in conformity with the public policy of this state.

A claim for uninsured motorist benefits is often predicated on a denial of liability coverage pursuant to a household exclusion. *See* 2 I. Schermer, *Automobile Liability Insurance* § 29.03[1] (2d ed. 1981). Such a household exclusion would be ineffectual in an automobile liability policy if the insured vehicle exclusion is found to be void as against public policy. Such a finding would be in direct contravention of the explicit statement of legislative policy contained in section 10–4–418(2)(b). *See Schlessinger v. Schlessinger*, 796 P.2d 1385 (Colo.1990) (abolition of Colorado's doctrine of limited parental immunity in the context of a negligence-based claim for uninsured motorist benefits would contradict the public policy embodied in section 10–4–418(2)(b)).

amount payable under uninsured motorist coverage by any personal injury benefits paid by the insurer was invalid because the provision allowed an insurer to provide less than the statutorily mandated minimum uninsured motorist coverage. *Id.* 197 Colo. at 465, 594 P.2d at 1043. We also held, in *Morgan v. Farmers Insurance Exchange,* that a policy term providing that an uninsured vehicle was one which did not have an applicable liability policy in effect at the time of the accident was ineffective to deny uninsured motorist benefits to the insured tortfeasor, despite the subsequent insolvency of the insurer. 182 Colo. at 206, 511 P.2d at 905. The provisions invalidated in *Kral, Newton,* and *Morgan* directly limited the insured's recovery of uninsured motorist benefits where the General Assembly intended that uninsured motorist benefits be recoverable to the full extent contemplated by section 10–4–609. *Kral, Newton,* and *Morgan* did not involve circumstances where an insured was seeking uninsured motorist benefits pursuant to the insured's automobile policy when liability coverage was excluded by the terms of the policy.

### IV.

Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c). In this case, the parties stipulated to the material facts and the trial court properly held that the insurance policy was not ambiguous and that it did not violate the public policy of this state. Accordingly, the judgment of the district court is affirmed.