2012 COA 170

Annabell JACOX, Plaintiff–Appellant,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant–Appellee.

No. 11CA1700.

Colorado Court of Appeals, Div. VII.

Oct. 11, 2012.

Anderson, Hemmat & Levine, LLC, Chad P. Hemmat, Ethan A. McQuinn, Denver, Colorado; The Folwer Law Firm, LLC, Timms R. Fowler, Fort Collins, Colorado, for Plaintiff–Appellant.

Jones, Waters, Geislinger & Seymour, LLC, David L. Geislinger, Colorado Springs, Colorado, for Defendant–Appellee.

Roberts Levin Rosenberg, PC, Michael J. Rosenberg, Denver, Colorado, for Colorado, Trial Lawyers Association Amicus Curiae.

Opinion by Judge HAWTHORNE.

¶ 1 In this underinsured motorist (UIM) coverage action, we affirm the district court's order granting a motion filed by defendant, American Family Mutual Insurance Company, and determining that plaintiff, Annabell Jacox, is not legally entitled to UIM benefits.

## I. Facts

¶ 2 Jacox was a passenger in Winferd Loper's vehicle when Loper fell asleep at the wheel, resulting in a one-car accident in which Jacox suffered injuries. Jacox filed a civil action against Loper and ultimately settled her suit against him, collecting the liability policy limit for bodily injuries. She also sought UIM coverage under Loper's American Family policy. American Family denied coverage because the policy's UIM section provides:

> Underinsured motor vehicle, however, does not mean a vehicle:
>
> (1) owned by or furnished or available for the regular use of you or a resident of your household ... [or]
>
> (6) insured under the liability coverage of this policy[.]

¶ 3 Jacox then filed the present action seeking UIM benefits. American Family filed a motion requesting an order determining that Jacox was not legally entitled to UIM benefits. American Family argued, among other reasons, that: (1) Loper's policy unambiguously excludes his vehicle as an underinsured vehicle for UIM benefits purposes; (2) by so excluding the vehicle, the policy does not violate the amended UIM statute, section 10-4-609, C.R.S.2012; and (3) it does not violate public policy because the supreme court in *Terranova v. State Farm Mutual Insurance Company*, 800 P.2d 58, 59 (Colo.1990) held that the identical exclusion does not violate public policy.

¶ 4 The district court issued an order granting the motion and dismissing Jacox's claims, ruling that Jacox was not entitled to UIM benefits under Loper's policy.

¶ 5 Jacox appeals.

## II. Analysis

¶ 6 Jacox contends that, for three reasons, the district court erred in granting American Family's motion and dismissing her claims: (1) she is entitled to UIM benefits pursuant to the amended UIM statute, section 10-4-609, which invalidated the otherwise on-point *Terranova* decision; (2) the exclusion in Loper's policy is inconsistent with another provision of the policy, and therefore the policy must be construed to provide UIM coverage for Jacox; and (3) Loper's policy contains other provisions that are outdated and contrary to the 2008 amendments to the UIM statute. We reject Jacox's first two argu-

ments and decline to address her final argument because, as explained below, she is not entitled to UIM benefits even if the other provisions do not comport with the 2008 amendments.

¶ 7 We review de novo a district court's interpretation of a statute, seeking to give effect to the General Assembly's intent by looking to the statute's plain language and the statutory provisions' overall context. *See In re Estate of Moring v. Colo. Dep't of Health Care Policy & Fin.*, 24 P.3d 642, 646 (Colo.App.2001). We also review de novo a district court's interpretation of an insurance policy. *See Wagner v. Travelers Prop. Cas. Co.*, 209 P.3d 1119, 1125 (Colo.App.2008).

### A. *Terranova* and the 2008 Amendments to the UIM Statute

¶ 8 Jacox contends that she is entitled to UIM benefits pursuant to the UIM statute, section 10–4–609, as it was amended in 2008. Specifically, she argues that the 2008 amendments invalidate *Terranova*'s reasoning, which had held that an uninsured motorist (UM)/UIM exclusion identical to the UIM exclusion in Loper's policy did not violate the prior version of the UIM statute or public policy. *Terranova*, 800 P.2d at 60–63. We conclude, like the division in *Rivera v. American Family Insurance Group*, 2012 COA 175, ¶¶ 10–11, 292 P.3d 1181, that the 2008 amendments to the UIM statute do not invalidate *Terranova*'s analysis or holding. Therefore, the UIM exclusion in Loper's policy is valid.

#### 1. *Terranova v. State Farm*

¶ 9 In *Terranova*, the insured was a passenger on a motorcycle that she owned and that was insured under her policy with the insurer. She was killed because of the negligence of a permissive driver whom the policy defined as an additional insured. *Terranova*, 800 P.2d at 59. The insurer paid the insured's estate the liability policy limits, but, when the insured's estate's losses exceeded those limits, it sought the difference between the UM/UIM coverage and the liability policy limits. *Id.* The insurer denied UM/UIM benefits to the estate because the insured's policy provided:

An uninsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy. . . .

*Id.* at 59–60.

¶ 10 The estate filed suit against the insurer, seeking UM/UIM benefits. *Id.* at 58–59. The supreme court framed the issue as "whether the General Assembly intended section 10–4–609 to be a complete statement of uninsured motorist insurance requirements or whether policy provisions that limit recovery of uninsured motorist benefits may be valid under the circumstances." *Id.* at 61. The court held:

Because of the distinct function of uninsured motorist insurance under Colorado's statutory motor vehicle insurance scheme, . . . the exclusion of a vehicle insured under the liability terms of a policy from uninsured motor vehicle coverage does not violate the legislative purposes and the public policy underlying section 10–4–609. In our view, the General Assembly, by enacting section 10–4–609, did not intend to set forth comprehensive requirements for uninsured motorist coverage.

*Id.* at 62. The court reasoned:

The conclusion that the insured vehicle exclusion does not violate Colorado's public policy as set forth in section 10–4–609 is supported by a comparative review of the Colorado statutes relating to liability coverage and uninsured motorist coverage. The requirement of mandatory minimum liability coverage is to protect the public from financial loss caused by the ownership, operation or maintenance of an automobile by an insured. On the other hand, uninsured motorist coverage, which must be offered to an insured but may be refused in writing, is designed to protect an insured from losses caused by third parties. The insured vehicle exclusion prevents a transformation of uninsured motor vehicle coverage into liability insurance when a claim is made for uninsured motorist benefits to compensate for injuries that result from the operation of a vehicle insured under the liability portion of a policy. In essence, if the insured vehicle ex-

clusion was found to be invalid, the insured would receive uninsured motorist coverage for a risk that was excluded by the policy, and which was not paid for by the insured and not contemplated by Colorado's uninsured motorist legislation.

*Id.* at 61–62 (footnote and ·citations omitted).

¶ 11 Here, like the policy at issue in *Terranova,* Loper's policy contains a UIM exclusion that applies to vehicles "insured under the liability coverage of this policy." Accordingly, if the 2008 amendments have not invalidated *Terranova's* analysis or holding, as Jacox argues, then *Terranova* mandates that Loper's UIM exclusion is valid. As explained below, we conclude that the 2008 amendments have not invalidated *Terranova.*

### 2. The 2008 Amendments

¶ 12 Effective January 1, 2008, the General Assembly modified the UIM statute, section 10–4–609, by adding subsection 1(c), which provides:

The coverage described in paragraph (a) of this subsection (1) shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of any legal liability coverage and the amount of the damages sustained, excluding exemplary damages, up to the maximum amount of the coverage obtained pursuant to this section. A single policy or endorsement for uninsured or underinsured motor vehicle coverage issued for a single premium covering multiple vehicles may be limited to applying once per accident. The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor ·vehicle insurance.

Ch. 413, sec. 1, § 10–4–609(1)(c), 2007 Colo. Sess. Laws 1921; *see* § 10–4–609(1)(c), C.R.S.2012; *Rivera,* 2012 COA 175, ¶ 11, 292 P.3d 1181. The General Assembly also removed language from other sections of the statute that had permitted insurers to include policy language prohibiting "stacking" of UM/UIM coverage limits in policies issued to an insured and an insured's resident relatives. *Rivera,* 2012 COA 175, ¶ 11, 292 P.3d 1181; *see Snell v. Progressive Preferred Ins. Co.,* 260 P.3d 37, 38 (Colo.App.2010) (citing Ch. 212, sec. 4, § 10–4–609(2), 1992 Colo. Sess. Laws 1759; Ch. 92, sec. 1, § 10–4–609(4), 1983 Colo. Sess. Laws 454). As relevant here, the General Assembly removed from subsection (4) language pertaining to the prior anti-stacking provisions, as shown below:

(4) Uninsured motorist coverage shall include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle, the ownership, maintenance, or use of which is insured or bonded for bodily injury or death at the time of the accident but the limits of liability for bodily injury or death under such insurance or bonds are: (a) Less than the limits for uninsured motorist coverage under the insured's policy; or (b) Reduced by payments to persons other than an insured in the accident to less than the limits of uninsured motorist coverage under the insured's policy.

Ch. 413, sec. 2, § 10–4–609(4), 2007 Colo. Sess. Laws 1922.

¶ 13 Jacox points to three changes made by the General Assembly as part of the 2008 amendments to the UIM statute that she argues, when considered together, invalidate *Terranova's* rationale.

¶ 14 First, Jacox points to the General Assembly's deletion of the anti-stacking language from subsection (4). According to Jacox, the resulting definition of an "underinsured motor vehicle" in subsection (4) is "now all encompassing and prohibits any exceptions regarding the vehicle's status [as owned by the named insured]."

¶ 15 Second, Jacox points to the General Assembly's addition of pro-stacking language in subsection (1)(c), which provides:

The [UIM] coverage described in paragraph (a) of this subsection (1) shall be in addition to any legal liability coverage and shall cover the difference, if any, between the amount of the limits of *any legal liabil-*

*ity coverage* and the amount of the damages sustained....

§ 10–4–609(1)(c) (emphasis added). According to Jacox, the General Assembly included the word "any" before "legal liability coverage" to indicate that UIM benefits can be stacked on top of "any" liability coverage, including liability coverage from the same policy from which an insured seeks UIM benefits.

¶ 16 Third, Jacox points to the General Assembly's prohibition against setoffs added in subsection (1)(c), which provides:

> The amount of the coverage available pursuant to this section shall not be reduced by a setoff from any other coverage, including, but not limited to, legal liability insurance, medical payments coverage, health insurance, or other uninsured or underinsured motor vehicle insurance.

§ 10–4–609(1)(c). According to Jacox, the exclusion in Loper's policy "constitutes an explicit, total, and automatic setoff against UIM coverage granted to Jacox as a passenger."

¶ 17 Jacox argues that, when considered together, these three changes demonstrate the General Assembly's intent to expand UIM coverage and abrogate *Terranova*'s rationale. Jacox also argues that these changes demonstrate the General Assembly's intent to invalidate *Terranova* because, unlike the previous UIM statute at issue in *Terranova,* the amended statute sets forth "a complete statement of uninsured motorist insurance requirements." *Terranova,* 800 P.2d at 61. We reject each argument in turn.

¶ 18 First, we reject Jacox's argument that, by deleting the anti-stacking language from subsection (4), the General Assembly intended to define "underinsured motor vehicle" as "all encompassing" and "prohibit[ing] any exceptions regarding the vehicle's status [as owned by the named insured]." Nowhere in subsection (4) did the General Assembly prohibit any exceptions regarding a vehicle's status. To the contrary, the deletion simply removed the narrow language concerning anti-stacking and harmonized it with the pro-stacking additions in subsection (1)(c). *See Rivera,* 2012 COA 175, ¶ 11, 292 P.3d 1181.

¶ 19 Second, we agree with Jacox's argument that, by adding the word "any" before "legal liability coverage," the General Assembly demonstrated an intent to allow UIM benefits to be stacked on top of "any" liability coverage, including liability coverage from the same policy from which an insured seeks UIM benefits. However, an insured's ability to stack such coverage from a single policy may nevertheless be prohibited by an exclusion in the insured's policy, like that in Loper's policy, prohibiting such single-policy stacking. *Terranova* permitted such a bargained-for exclusion, and the language Jacox cites in section 10–4–609(1)(c) does not prohibit it. *Terranova,* 800 P.2d at 60–63. Thus, the General Assembly's including the word "any" does not affect the validity of the exclusion in Loper's policy that bars Jacox from receiving UIM benefits in addition to the liability benefits she already received.

¶ 20 Third, we reject Jacox's argument that the General Assembly's inclusion of language in subsection (1)(c), which prohibits setoffs from UIM coverage, "constitutes an explicit, total, and automatic setoff against UIM coverage granted to Jacox as a passenger." The division in *Rivera* persuasively rejected this identical argument, and its reasoning applies equally here:

> [T]he "setoff" that the pro-stacking amendments in subsection (1)(c) prohibit is different from the "exclusion" upheld in *Terranova.* A "setoff" is "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor; the counterbalancing sum owed by the creditor." Bryan A. Garner, *Black's Law Dictionary* 1496 (9th ed.2009); *see, e.g., Savage v. Williams Prod. RMT Co.,* 140 P.3d 67, 72 (Colo.App.2005).
>
> Conversely, an "exclusion" is "an insurance-policy provision that excepts certain events or conditions from coverage." *Black's Law Dictionary* at 646; *see Dupre v. Allstate Ins. Co.,* 62 P.3d 1024, 1029 (Colo.App.2002). American Family does not seek to apply a "setoff" to the full amount of liability coverage that Rivera was owed under the policy because of the driver's negligence. To the contrary, American Family paid Rivera the policy's

liability coverage limits. American Family has excluded UM/UIM coverage under the policy for the driver's liability-coverage-insured vehicle—an insured vehicle exclusion like that upheld in *Terranova*. *See Terranova*, 800 P.2d at 59–60.

¶ 21 *Rivera*, 2012 COA 175, ¶ 16, 292 P.3d 1181.

¶ 22 Fourth, we reject Jacox's arguments that, when considered together, each of these changes demonstrates the General Assembly's intent to expand UIM coverage, to set forth "a complete statement of uninsured motorist insurance requirements," and to therefore invalidate *Terranova*'s rationale. Although we agree that the changes demonstrate the General Assembly's intent to expand UIM coverage by permitting, in certain instances, the stacking of UIM benefits on top of liability benefits, we disagree that the changes—whether considered alone or together—demonstrate an intent to set forth "a complete statement of uninsured motorist insurance requirements" or otherwise abrogate any portion of *Terranova*. *Terranova*, 800 P.2d at 61. The statute does not express such an intent, and we will not read one into the statute. *See Rook v. Indus. Claim Appeals Office*, 111 P.3d 549, 552 (Colo.App. 2005) (court "may not read into a statute a provision not found in it"); *cf. People v. Sorrendino*, 37 P.3d 501, 504 (Colo.App.2001) (court should not read into a statute a qualifier that the plain language does not express).

¶ 23 Not only do the changes Jacox cites fail to demonstrate an intent to invalidate *Terranova*, we conclude that the opposite is true: the changes demonstrate the General Assembly's intent to ratify *Terranova*. The *Rivera* division persuasively explained this point:

> [E]ven though other parts of section 10–4–609 were added, deleted, or modified, the statutory language that *Terranova* construed has not been changed. In our view, the language from subsection (4) was deleted merely to harmonize that subsection with the new subsection (1)(c), which means the General Assembly was aware of,

and approved of, the prior judicial construction.

*Rivera*, 2012 COA 175, ¶ 15, 292 P.3d 1181.

¶ 24 Accordingly, because the 2008 amendments to the UIM statute have not invalidated *Terranova*, the UIM exclusion in Loper's policy is valid. *See Terranova*, 800 P.2d at 60–63.

## B. Inconsistency Between UIM Exclusion and UIM "LIMITS OF LIABILITY" Provision

¶ 25 Jacox nevertheless contends that she is entitled to UIM benefits under Loper's policy because the policy contains an inconsistency between the UIM exclusion discussed above and the UIM "LIMITS OF LIABILITY" portion of the policy. Thus, Jacox argues that the policy must be construed to provide coverage for her. We disagree that the provisions she cites are inconsistent.

¶ 26 As discussed, Loper's policy contains an exclusion in the UIM section that provides:

> Underinsured motor vehicle, however, does not mean a vehicle:
>
> (1) owned by or furnished or available for the regular use of you or a resident of your household ... [or]
>
> (6) insured under the liability coverage of this policy[.]

¶ 27 Loper's policy also contains a provision in the UIM section titled "LIMITS OF LIABILITY", which provides, in relevant part:

> E. LIMITS OF LIABILITY
>
> . . .
>
> 1. The limits of liability of the coverage will be reduced by:
>
> . . .
>
> b. a payment under the Liability Coverage of this policy.

¶ 28 Jacox argues that these provisions are inconsistent and therefore must be construed in her favor. She reasons:

> UIM coverage is granted to an occupant, such as Jacox, but then the definition of an uninsured vehicle purports to exclude her from coverage. Nevertheless, the forego-

ing provision regarding liability limits states in explicit language that bodily injury liability payments made under this policy will be offset against the UIM coverage. Hence, [the LIMITS OF LIABILITY] contemplates payment under the bodily injury liability coverage despite the exclusions. Therefore, as a matter of policy construction, the exclusion is unenforceable.

¶ 29 However, we disagree that the provisions are inconsistent here because, per the exclusion, there is no UIM coverage, and therefore there can be no limit of liability for the non-existent UIM coverage.

### C. Outdated Provisions

¶ 30 Finally, Jacox contends that, for three additional reasons, she is entitled to UIM benefits under Loper's policy: (1) the definition of an underinsured vehicle in the policy is invalid because it is based on the UIM statute's previous definition of an underinsured vehicle, which was later amended in 2008; (2) the setoffs included in the "LIMITS OF LIABILITY" portion of the UIM policy violate the amended UIM statute; and (3) Jacox's "summary disclosure form" includes a definition of an underinsured vehicle and a setoff, both of which violate the amended UIM statute. We do not address these arguments because, even if we assume that Jacox is correct as to each argument, none would affect the validity of the UIM exclusion that, as discussed, bars Jacox from receiving UIM benefits under Loper's policy. *See Terranova,* 800 P.2d at 60–63; *Rivera,* 2012 COA 175, ¶ 6, 292 P.3d 1181.

¶ 31 The order is affirmed.

Judge ROMÁN and Judge FURMAN concur.