**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TRACEY CHECKLEY, individually and on behalf of her minor child James Checkley,

      Plaintiff - Appellant/Cross-Appellee,

v.

ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,

      Defendant - Appellee/Cross-Appellant.

No. 14-1482 and 14-1495
(D.C. No. 1:14-CV-02369-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Chief Judge, **KELLY**, and **LUCERO**, Circuit Judges.

---

In this removed civil action now on appeal, Plaintiff-Appellant and Cross-Appellee Tracey Checkley appeals from the district court's judgment dismissing her complaint and action against Defendant-Appellee and Cross-Appellant Allied Property and Casualty Insurance Co. (Allied). Allied cross-appeals from the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court's judgment denying its motion for attorney's fees. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

On August 28, 2013, Johnny Branner invited sixteen-year-old Plaintiff James Checkley to go four-wheeling near Woodland Park, Colorado. The trip began with Mr. Branner driving his 1999 Jeep Cherokee. Eventually Mr. Branner pulled over and asked Mr. Checkley, who was not licensed, to drive so that Mr. Branner could text his girlfriend. Mr. Checkley agreed. While driving down a dirt and gravel road in Pike National Forest, Mr. Checkley swerved to avoid an animal and struck a tree. Mr. Checkley fractured his hip socket in the accident.

Mr. Checkley and his mother filed a claim with GEICO, which insured the vehicle under Mr. Branner's mother's policy. GEICO denied liability for the Checkleys' claim, however, because Mr. Branner's mother had reported different facts, including that Mr. Checkley was not in the car. The Checkleys then filed a claim with their insurer, Allied, under the uninsured/underinsured motorist (UM/UIM) coverage, which included James Checkley, as a relative of the policy holder. The policy provided that Allied would pay "compensatory damages . . . which are due by law to you or a relative from the owner or driver of an uninsured motor vehicle because of bodily injury suffered by you or a relative."

Aplt. App. 95. Allied denied the Checkleys' claim.[1] The Allied policy excluded from the definition of "uninsured motor vehicle" any motor vehicle operated by the insured or a relative. Thus, the policy excluded UM/UIM coverage when the insured or a relative was driving the vehicle at the time of the accident.

After Allied denied this claim, the Checkleys filed suit in Colorado state court against Allied. The complaint alleged: (1) breach of contract; (2) breach of common law duty of good faith and fair dealing (bad faith breach of insurance contract) in denying the claim; and (3) violation of Colorado Revised Statutes sections 10-3-1115 and 10-3-1116. Allied removed the case to federal court and filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). After a hearing, the district court granted the motion, dismissed all three claims, and denied Allied's request for attorney's fees under Colorado Revised Statutes section 13-17-201. Because the Allied policy exclusion precludes the UM/UIM claim and because this exclusion does not violate Colorado public policy, we affirm the district court's dismissal of all of the Checkleys' claims. Because the substantial predicate of the Checkleys' claims is the breach of contract claim, we also affirm the district court's denial of attorney's fees.

---

[1] At oral argument, counsel indicated that Allied did pay medical under the policy. Oral Arg. at 30:25–30:47.

## Discussion

Our review is de novo. To survive a motion to dismiss, the plaintiff must allege facts that "if assumed to be true, plausibly suggest the defendant is liable." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). A court must not "weigh potential evidence that the parties might present at trial, but . . . assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1135 (10th Cir. 2014) (internal quotations and citation omitted). We accept all well-pleaded facts as true, along with reasonable inferences from those facts. Colony Ins. Co. v. Burke, 698 F.3d 1222, 1228 (10th Cir. 2012). We review the denial of a request for attorney's fees under a statute de novo. See Corneveaux v. CUNA Mut. Ins. Grp., 76 F.3d 1498 (10th Cir. 1996) (quoting Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir. 1986)). The parties agree that Colorado state law controls in this diversity action.

A.    Breach of Contract

The Checkleys contend that by denying UM/UIM coverage, Allied has breached the insurance contract. Applying the exclusion, they argue, would violate Colorado law requiring coverage in this case. Colorado law mandates UM/UIM coverage be offered in every insurance contract. Colo. Rev. Stat. § 10-4-609. This coverage must "include coverage for damage for bodily injury or death that an insured is legally entitled to collect from the owner or driver of

- 4 -

an underinsured motor vehicle." Id. § 10-4-609(4) (emphasis added). The Checkleys argue the UM/UIM statute requires the contract to include coverage because they are "legally entitled to collect" against Mr. Branner under the theory of negligent entrustment. They rely upon Casebolt v. Cowan, 829 P.2d 352 (Colo. 1992) (en banc), which they maintain recognized such a theory. Because parties cannot contractually limit required coverage, see, e.g., DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 173 (Colo. 2001) (en banc), the Checkleys argue that the exclusion in the policy is void and to deny them coverage would be a breach of contract.

Allied responds that Casebolt recognized the tort of negligent entrustment only in drunk driving cases, so the terms of the insurance policy do not conflict with Colorado public policy or law. Thus, the policy excludes the Checkleys' claim. We need not read Casebolt as narrowly as Allied to conclude that negligent entrustment, as recognized in Colorado, does not bar the exclusion in this case.

In Casebolt, a surviving spouse sued her husband's employer for wrongful death. The husband died driving the employer's vehicle while intoxicated. Casebolt, 829 P.2d at 353. The surviving spouse claimed that the employer knew the decedent had an alcohol problem but still permitted him to drive the company car after drinking. Id. at 354–55. The surviving spouse based her case on a theory of negligent entrustment, and the Colorado Supreme Court "confirm[ed]

- 5 -

that the doctrine of negligent entrustment is part of the law of negligence in this state." Id. at 355, 357.

In determining the applicability and scope of the doctrine, the court turned to the Restatement (Second) of Torts, specifically sections 308[2] and 390.[3] Id. at 358. The court, however, refused to adopt sections 308 and 390 outright:

> We believe it would be misleading to use the word "adopt" as applied to our reliance on the Restatement rules. We consider those rules appropriate for analysis of the present case without holding that they would necessarily apply to all fact situations that could be construed to come within their ambit.

---

[2] That pertinent section provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (Am. Law Inst. 1965).

[3] That pertinent section provides:

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them.

Id. § 390 (Am. Law Inst. 1965).

Id. at 358 n.6.  The court refused to "impose a rigid, formalistic analysis on entrustment cases."  Id. at 359.  Rather, the court indicated a case-by-case approach to negligent entrustment, requiring courts to analyze and consider whether policy factors preclude the application of the doctrine.[4]  See id. at 361.

We, like the court in Casebolt, take guidance from the Restatement, which explains that "[o]ne who accepts and uses a chattel knowing that he is incompetent to use it safely . . . is usually in such contributory fault as to bar recovery."  Restatement (Second) of Torts § 390, cmt. c (Am. Law Inst. 1965).  The Restatement thus normally bars recovery under a negligent entrustment theory when "the person to whom the chattel is supplied realizes his incompetence . . . ."  See id. § 390, cmt. d.  An illustration provided by the Restatement includes facts strikingly similar to this case:

> A permits B, whom he knows to be an inexperienced driver, to use his car.  B invites his friend C, who knows of his inexperience, to drive with him.  B's inexperience leads him to drive in a way which is obviously improper.  In so doing he collides with the carefully driven car of D.  The collision results in harm to both B and C.  While neither

---

[4]  In Casebolt, the court considered "the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the actor," to determine if any policy factors counseled against the doctrine's application.  Casebolt, 829 P.2d at 361 (internal quotation and citation omitted).  These factors, however, were not exclusive.  Id.

B nor C may recover against A, A is subject to liability to D.

Id. § 390, cmt. d, illus. 8.

This case, therefore, mirrors an exclusion from the doctrine of negligent entrustment that the Restatement anticipated. Mr. Branner asked Mr. Checkley to operate the vehicle. Mr. Checkley knew he was not licensed to do so. Even assuming that Mr. Branner's request was negligent, Mr. Checkley cannot recover for this because he knew of his own inexperience.[5] We do not believe that the Colorado court would extend the scope of negligent entrustment beyond the Restatement, especially given the limiting language used in Casebolt.

Our application of Casebolt and the Restatement to this case is bolstered by the policy behind Colorado's UM/UIM statute, articulated in Terranova v. State Farm Mutual Automobile Insurance Co., 800 P.2d 58 (Colo. 1990) (en banc). In Terranova, the insured's children sought to recover UM/UIM benefits after their

_____

[5] The Checkleys argue that Mr. Checkley's knowledge of his experience is a question of fact and not appropriate for determination on a motion to dismiss. But Mr. Checkley admitted he knew of his inexperience in an interview incorporated into the complaint. At the hearing on the motion to dismiss, the court suggested treating the allegations in plaintiffs' response and the two exhibits (the interview and a letter from the attorney) as constituting an amended complaint. Aplt. App. 189–90. The parties agreed and the court based its legal determination on the facts alleged in this "amended complaint." Id. at 190–91; see also Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."). In this interview, Mr. Checkley stated that he not only lacked a driver's license but also a learner's permit. Aplt. App. 143. He knew that he was just learning how to drive and his only driving experience was with his mom a couple of times in a parking lot. Id. at 143–44.

- 8 -

mother was killed in a single-vehicle accident while riding on the back of her motorcycle. Id. at 58. The negligent driver of the motorcycle was a permissive driver and therefore an additional insured under the policy. Id. The decedent's children attempted to collect on the UM/UIM coverage ($100,000 limit) after exhausting liability coverage for bodily injury ($25,000). Id. at 59. Vehicles covered by the policy, however, were excluded from the definition of an uninsured vehicle. Id. Under the terms of the policy, therefore, the uninsured motorist coverage did not apply. Like the Checkleys, the children argued that this policy limitation violated the legislative policies of § 10-4-609 by diluting mandated coverage. Id. at 60.

The court disagreed and determined that in some circumstances "policy provisions that limit recovery of uninsured motorist benefits may be valid." Id. at 61. It explained: "[T]he purpose of the uninsured motorist coverage mandated by section 10-4-609 is to compensate an innocent insured for loss, subject to the insured's policy limits, caused by financially irresponsible motorists." Id. (citing Kral v. Am. Hardware Mut. Ins. Co., 784 P.2d 759, 765 (Colo. 1989)). The law "does not require full indemnification of losses suffered at the hands of uninsured motorists under all circumstances." Id. (citing Alliance Mut. Cas. Co. v. Duerson, 518 P.2d 1177, 1180 (Colo. 1974) (en banc)). To eliminate the policy restriction in Terranova would grant "uninsured motorist coverage for a risk that was excluded by the policy, and which was not paid for by the insured and not

contemplated by Colorado's uninsured motorist legislation." Id. at 62. The restriction was thus valid.

The comparison between Terranova and the Checkleys' case is strong. Invalidating the exclusion in this case would undercut the "distinct function" of Colorado UM/UIM law. The law is "designed to protect an insured from losses caused by third parties," id. (citing Kral, 784 P.2d at 765), not losses caused by the insured himself. See also DeHerrera, 30 P.3d at 173 ("[A]n insured is entitled to recover UM/UIM benefits when a person who is at fault in an accident does not have any liability insurance." (emphasis added)). Mr. Checkley was not an innocent driver harmed by the negligence of a third party—he caused the accident himself. Though the Checkleys claim the accident was caused by the negligence of a third party—namely Mr. Branner's negligent entrustment of the vehicle to Mr. Checkley—this ignores Mr. Checkley's own role in the accident. He knew he was inexperienced and unlicensed. In these circumstances, we find the exclusion at issue in this case to be in accord with the policy underlying Colorado's UM/UIM statute and therefore the Checkleys' breach of contract claim fails.

B.     Bad Faith

In addition to the breach of contract claim, the Checkleys also assert a claim for common law bad faith breach of an insurance contract and a statutory claim for unreasonable delay or denial of payment. See Sanderson v. Am. Family Mut. Ins. Co., 251 P.3d 1213, 1217 (Colo. App. 2010); see also Colo. Rev. Stat.

§§ 10-3-1115, 10-3-1116. To prove a common law claim for bad faith, the Checkleys must prove that Allied acted unreasonably and either knowingly or recklessly ignored the validity of their claim. Sanderson, 251 P.3d at 1217. It is not unreasonable for an insurer to deny claims that are "fairly debatable." Zolman v. Pinnacol Assurance, 261 P.3d 490, 496 (Colo. App. 2011). Under the statute, an insurance agency may "not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). A delay or denial is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Id. § 10-3-1115(2). Unless genuine issues of material fact exist, the reasonableness of a denial may be decided as a matter of law. Fisher v. State Farm Mut. Auto. Ins. Co., No. 13CA2361, 2015 WL 2198515, *7 (Colo. App. May 7, 2015). The Checkleys' claims were, at a minimum, "fairly debatable." They depended on an interpretation of Colorado case law that was not clearly established and which we predict Colorado courts would reject. Further, Allied did not deny the claim without a reasonable basis. The terms of the contract plainly excluded the claim and this exclusion has never been held impermissible under Colorado law. Therefore, the district court properly dismissed both claims for bad faith.

C.    Attorney's Fees

After the district court dismissed the Checkleys' claims, Allied requested

- 11 -

attorney's fees under Colorado Revised Statutes section 13-17-201. The statute

provides, in part:

> In all actions brought as a result of a death or an injury to person or
> property occasioned by the tort of any other person, where any such
> action is dismissed on motion of the defendant prior to trial under rule
> 12(b) of the Colorado rules of civil procedure, such defendant shall
> have judgment for his reasonable attorney fees in defending the action.

Colo. Rev. Stat. § 13-17-201. We have held that the granting of attorney's fees

under this statute is mandatory and applies to dismissal under Federal Rule of

Civil Procedure 12(b) as well. See Shrader v. Beann, 503 F. App'x 650, 654–55

(10th Cir. 2012). Colorado courts have held that where a complaint alleges both

tort and non-tort claims, attorney's fees should be granted under section 13-17-

201 "if the action is primarily a tort action." U.S. Fax Law Ctr., Inc. v. Henry

Schein, Inc., 205 P.3d 512, 517–18 (Colo. App. 2009). In Dubray v. Intertribal

Bison Co-op, 192 P.3d 604 (Colo. App. 2008), the court rejected the plaintiff's

assertion that his case was primarily a contract action because "six of his eight

claims against defendants, and eight of his ten total claims asserted, were pleaded

as tort claims." Id. at 607. The court noted that "[p]laintiff obviously chose to

include these claims to obtain relief beyond what was available solely under a

breach of contract theory." Id. In determining if the action is primarily a tort

action, subsequent Colorado courts have asked "whether the essence of the action

was one in tort . . . ." Castro v. Lintz, 338 P.3d 1063, 1068 (Colo. App. 2014).

One Colorado court has adopted "the 'predominance' test, assessing whether the

'essence of the action' is tortious in nature (whether quantitatively by simple

number of claims or based on a more qualitative view of the relative importance

of the claims) or not." Gagne v. Gagne, 338 P.3d 1152, 1168 (Colo. App. 2014)

(internal quotation and citation omitted). If the "predominance test failed to yield

a clear answer, such as when the tort- and non-tort claims are equal in number or

significance," then courts should "turn to the question of whether tort claims

were asserted to unlock additional remedies . . . ." Id.

The Checkleys brought three claims against Allied: (1) breach of contract;

(2) breach of covenant of good faith and fair dealing; and (3) violation of

Colorado Revised Statutes sections 10-3-1115 and 10-3-1116, which provide a

statutory cause of action against an insurer that has unreasonably delayed or

denied a claim. We recognize that Colorado treats a common law bad faith

breach of an insurance contract as a tort. Sanderson, 251 P.3d at 1217 (citing

Goodson v. Am. Standard Ins. Co., 89 P.3d 409, 414 (Colo. 2004)). It is

apparent, however, that the substantial predicate of the claims in this case—the

"essence of the action"—is the ostensible breach of contract, a claim which we

have rejected. Thus, the district court properly denied attorney's fees.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge